CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 27 2017

JULIA C. DUDLEY, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON W. MCDONALD, | ) | CASE NO. 7:16CV00448 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Jason W. McDonald, a Virginia inmate proceeding pro se, timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment in the Louisa County Circuit Court for aggravated malicious wounding, malicious wounding by mob, and conspiracy to commit malicious wounding. Respondent filed a motion to dismiss, and McDonald responded, making the matter ripe for disposition. McDonald also filed a motion to authorize discovery. After review of the record, I grant the motion to dismiss, dismiss the petition, and deny the pending motion.

I.

*A. Factual Background*

McDonald was tried along with codefendants Chad and Sedrick Goins. The Virginia Court of Appeals summarized the facts as follows:

> At about 11:00 p.m. on June 19, 2011, Deputy Jay Hensley of the Louisa County Sheriff's Office went to 288 Kinneytown Road in response to a 911 call. He found Steve Minor in a ditch in front of a residence at that address. Minor had sustained a severe traumatic brain injury that required emergency surgery. Effects of the injury were permanent.
> On the afternoon of June 19, 2011, Robert Watson drank beer and played horseshoes at the residence of Dwayne Shelton. Shelton took Watson to his home on Newline Road at about 8:00 p.m. Shelton said that while Watson had been drinking that day, Watson was not drunk when Shelton took him home.
> Kelly Goins (Kelly) was the girlfriend of Minor, the sister of Chad Goins (Chad), and the mother of Sedrick Goins (Sedrick). At about 9:00 p.m. on June

1

> 19, 2011, Kelly went to the hospital by ambulance to receive emergency medical treatment. She was transported to the hospital room from the home of Lewis Dunivan at 111 Kinneytown Road. [McDonald] had made the 911 call regarding Kelly and, using a false name, reported that Kelly had been assaulted by her boyfriend. [McDonald] and Sedrick both were present at 111 Kinneytown Road, but Minor was not.
>     Sedrick later approached Shelton, who was a professional fighter, about fighting Minor. Shelton testified that Sedrick was upset with Minor because of an incident that occurred with Kelly earlier that evening. Shelton refused to fight Minor. Dunivan heard [McDonald] arguing with someone on the telephone and threatening to "beat that nigger's ass."
>     After he arrived home, Watson received a telephone call from [McDonald]. After the phone call, Chad and Minor appeared in a vehicle at Watson's residence. Watson agreed to go to the store with Chad and Minor to purchase beer. While they were traveling, Chad turned the vehicle in the opposite direction from the store's location. When Watson asked what he was doing, Chad said he was avoiding the police because he had no driver's license. Chad was speeding as he drove to 288 Kinneytown Road, then turned into the driveway. After they stopped, Watson saw one person standing outside the trailer, and two people inside a vehicle that was parked there. Minor and Watson got out of the car.
>     Watson testified that people came toward them to confront Minor. [McDonald] grabbed Watson by the arm. When Watson protested, [McDonald] cursed at him. Minor started running away from the group that had confronted him. [McDonald] released Watson and joined the group purs[u]ing Minor. The members of the group threw Minor down, kicked him, and stomped him. Watson identified [McDonald], Chad, and Sedrick as some of the men engaged in the beating. After hearing a loud sound he thought was a gunshot, Watson ran toward the home of Josephine Brooks because he feared the group would come after him. Watson called 911 and reported that five men were beating Minor.

McDonald v. Commonwealth, No. 0773-12-2, 1-2 (Va. Ct. App. Apr. 24, 2013). Moreover, Watson testified that he could clearly see the beating because the area was well-illuminated by a streetlight.

The Commonwealth relied heavily upon Watson's eyewitness account; however, Watson admitted having prior felony convictions and that he had initially told the police that Chris Johnson took part in the beating, but later rescinded that statement. Also, at trial, someone in the courtroom had detected the odor of alcohol on Watson's breath and alerted the judge. The judge was asked whether a breathalyzer test would be appropriate, but the judge determined that a test

2

was unnecessary because it would not have produced admissible evidence and Watson had not acted unlawfully or appear under the influence.

Beyond Watson's testimony, the Commonwealth also introduced phone records that demonstrated that Chad had contacted Shelton on the night of June 19, 2011, and that McDonald had made the 911 phone call regarding Kelly. Further, a Verizon Wireless custodian of records testified regarding calls and text messages among McDonald, Chad, and Sedrick. At 10:45 p.m., the phone that Sedrick used[1] sent a message stating: "Yo, oh, I'm bout to kill Steve." Id. at 3. The following day, that same phone texted: "Oh I may be in deep shit . . . . Tomorrow I have to talk to my lawyer. Things are really bad. I mean, really bad." Id.

## B. Procedural History

In 2012, a Louisa County Circuit Court jury convicted McDonald of aggravated malicious wounding, malicious wounding by mob, and conspiracy to commit malicious wounding, and the court sentenced him to twenty-six years in prison. He appealed, but the Virginia Court of Appeals and the Virginia Supreme Court denied his petitions. He filed a motion to have the circuit court modify his sentence, but the court refused his request.

In 2015, McDonald filed a timely petition for a writ of habeas corpus in the Louisa Circuit Court, raising substantially the same claims as his current petition.[2] The circuit court denied relief. He brought the same claims to the Virginia Supreme Court, but the court refused his habeas appeal.

## II.   Claims

McDonald raises the following claims:

---

[1] Testimony established that Kelly owned the phone but that she allowed Sedrick to use it.

[2] McDonald did not include Claim 8 in his state habeas petition.

3

1. The Commonwealth violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) by withholding exculpatory information that contradicts the testimony of the only testifying eyewitness, Robert "Squirrel" Watson;

2. The Commonwealth violated <u>Brady</u> by withholding information that Watson was drunk;

3. The Commonwealth violated <u>Brady</u> by failing to disclose that DNA testing had been done on the vehicle allegedly used by the defendants to flee the scene of the assault;

4. The Commonwealth violated <u>Brady</u> by providing the defense with false <u>Brady</u> material. The Commonwealth had informed defense counsel that Watson and Craig Johnson were cousins, but they were not actually related;

5. The Commonwealth violated <u>Brady</u> by withholding exculpatory evidence that goes directly to the credibility of the Commonwealth's witness, Dwayne Shelton;

6. The Commonwealth violated <u>Brady</u> by presenting the jury what is now known to be a "false victim impact statement";

7. Counsel was ineffective for failing to fully and effectively conduct an investigation of the victim's injuries and cause of injuries; and

8. The evidence in its totality was insufficient to establish guilt beyond a reasonable doubt, which violated McDonald's rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution.

McDonald has raised all of his claims in the Virginia Supreme Court; therefore, his claims are properly exhausted under <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000).

4

### III. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (omitting internal quotations). The AEDPA standard is "highly deferential" to both factual findings and legal conclusions, and the petitioner bears the burden of proof. Id. at 105; Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). "The petitioner must show both deficient performance *and* prejudice; the two are separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994) (emphasis added).

For the first prong, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Habeas courts maintain a

5

"strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

For the second prong, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Lastly, to establish a Brady violation, "a convicted defendant must make each of three showings: (1) the evidence at issue is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the State suppressed the evidence, 'either willfully or inadvertently'; and (3) 'prejudice . . . ensued.'" Skinner v. Switzer, 562 U.S. 521, 536 (2011) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). To show prejudice under Brady, the evidence must have been material. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976).

## IV. Procedural Default

The United States Supreme Court has long held that a state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). A procedural rule is adequate "if it is regularly or consistently applied by the state court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974) is an adequate and independent state procedural bar that arises when a petitioner could have raised an issue at trial and on direct appeal, but failed to do so. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006) (Parrigan is an adequate and independent bar.).

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." Bell v. True, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to prove his actual innocence. *Schlup v. Delo*, 513 U.S. 298, 339-40 (1995).

7

### V. Discussion

#### A. Claim 1

In Claim 1, McDonald alleges that the Commonwealth committed a Brady violation by failing to disclose information that contradicted Watson's testimony. At trial, Watson testified that although he initially told law enforcement that Craig Johnson had been present at the scene of the crime, he mistook Johnson for McDonald's brother, Kem.[3] However, co-defendant Sedrick Goins, in a post-trial interview, told law enforcement that Craig Johnson was present at the beating and participated. McDonald claims that this new information entitles him to a new trial.

On habeas review, the Louisa County Circuit Court held:

> The value of Sedrick's interview is to impeach Watson on whether Craig Johnson was at the scene of the crime. Watson's credibility, however, was impeached with regards to whether Craig Johnson was at the scene. For instance, Watson was cross-examined extensively about whether Craig Johnson was at the scene of the crime, and why Watson had changed his story about seeing Johnson. (Trial Tr. 287, 289, 299-300, 304). The defense also called Dianne Bradshaw who testified that Johnson and McDonald's brother differ significantly in appearance. (Trial Tr. 653-58). Thus, Sedrick's identification [of] Johnson at the scene of the crime is cumulative to the evidence already presented to challenge Watson's credibility. See Lockhart v. Commonwealth, 34 Va. App. 329, 346, 542 S.E.2d 1, 9 (2001) (noting the Brady evidence "was simply more of the same type of evidence and would not, we conclude, have put the whole case in such a different light as to undermine confidence in the verdict"); see also United States v. Cooper, 654 F.3d 1104, 1120 (10th Cir. 2011) (Undisclosed evidence that is "cumulative of evidence of bias or partiality already presented and thus would have provided only marginal additional support for the defense" is not material for Brady purposes) . . .
> 
> Furthermore, Sedrick's interview would not have been helpful to McDonald in gaining a new trial because Sedrick told law enforce[e]ment that McDonald committed the crimes. Sedrick's interviewer, Detective Carlton Johnson, testified at the October 17, 2014 post-trial hearing that "the only thing that was different [in Sedrick's account] was that Craig Johnson was there and participated" everything else was the same, "including Mr. McDonald's involvement." The Court found Detective Johnson's testimony credible. Considering the record as a whole, Sedrick's interview would not, if used, have

---

[3] The court reporter transcribed McDonald's brother's name as both Kim and Kam.

8

"put the whole case in such a different light as to undermine the confidence in the verdict." Thus, it does not meet the Brady standard for materiality.

McDonald v. Clarke, No. CL15-04-00, 5, 7-8 (Va. Cir. Ct. May 21, 2015).

I agree with the state court's analysis. Counsel repeatedly impeached Watson's credibility; therefore, Sedrick's testimony further impeaching Watson's recanted identification of Craig Johnson is cumulative and immaterial under Brady.[4] At trial, defense counsel impeached Watson's credibility regarding Craig Johnson's presence directly by pointedly asking several questions such as: "How far away were you from Craig Johnson when you identified, falsely identified him?" Trial Tr. 287. Second, counsel called Bradshaw to testify as to the significant differences between Craig Johnson and McDonald's brother, including height, weight, hairstyle, and skin tone. Trial Tr. 654-57. Third, although McDonald's petition includes a 2014 affidavit from Sedrick stating that McDonald did not participate in the beating but instead attempted to stop it, the affidavit directly contradicts Sedrick's prior statements and is irrelevant to McDonald's Brady claims.[5]

Therefore, I grant the motion to dismiss as to Claim 1, because the state court's finding was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts.

*B. Claim 2*

---

[4] In his Response, McDonald points out that Craig Johnson testified that McDonald was not present during the beating. However, Craig Johnson's testimony is irrelevant to McDonald's current Brady claim because Craig Johnson testified at McDonald's sentencing and McDonald has not proffered any evidence that the Commonwealth suppressed his testimony. Also, Johnson's statements conflict with testimony from Watson, Chad, Sedrick, and Detective Carlton Johnson.

[5] The Commonwealth never suppressed the information in the affidavit. Moreover, Sedrick's recantation is problematic because of his inconsistent statements and his repeated answers of "I don't remember" in response to the Commonwealth's questions at McDonald's sentencing hearing. At the time, Sedrick Goins said that he was "trying to forget [the beating]." Mot. Hr'g Tr. at 76 (Oct. 17, 2014).

9

In Claim 2, McDonald contends that the Commonwealth committed a Brady violation by withholding the information that Watson was intoxicated at trial. Specifically, McDonald alleges that Brady was violated because even though at least one member of the Louisa County Sheriff's Department was aware that Watson had an odor of alcohol when he gave testimony, Watson's alleged intoxication was not shared with the defense, and thus counsel never cross-examined Watson regarding his intoxication level. McDonald also proffers an affidavit from Irene Goins Bradshaw, who claims that she personally witnessed Watson consume alcohol during court breaks while he was a witness for the Commonwealth. McDonald argues that the "jury could have found that a drunken witness is less credible than a sober one." Pet. 7, ECF No. 1.

McDonald raised the issue of Watson's intoxication at his sentencing, on appeal, and in his state habeas.[6] The Virginia Court of Appeals rejected the claim:

> At the sentencing hearing, [McDonald] moved to set aside the verdict based on allegedly newly discovered evidence that someone in the courtroom had detected the odor of alcohol on Watson's breath during trial. At sentencing, the trial judge stated that the allegation regarding alcohol had been brought to his attention in the midst of Watson's testimony, and the judge was asked whether a breathalyzer test should be administered upon Watson. The judge stated that no such test would be given as it would not produce admissible evidence, and there was no indication Watson had acted unlawfully. In addition, the trial judge noted at the sentencing hearing that he did not detect any odor of alcohol about Watson at trial, nor was there an indication Watson was under the influence. The trial judge denied the motion to set aside the verdict, finding [McDonald] had not been denied exculpatory evidence . . .
> 
> [McDonald] contends that he was denied his right to material exculpatory evidence to which he was entitled under Brady v. Maryland, 373 U.S. 83 (1962). Although the trial judge recalled being approached about the suspicion that Watson smelled of alcohol, this circumstance was not verified by any evidence or testimony at the sentencing hearing tending to prove the assertion about Watson had been true. Nor was there evidence that Watson was incompetent to testify. See Tomlinson v. Commonwealth, 8 Va. App. 218, 222-23, 380 S.E.2d 26, 29 (1989) (quoting Burnette v. Commonwealth, 172 Va. 578, 591, 1 S.E.2d 268, 269 (1939) ("'A witness is not rendered incompetent by the fact that he . . . is drunk at

---

[6] Under Henry v. Warden, 576 S.E.2d 495, 496 (Va. 2003) Virginia state habeas courts do not review claims that are raised at trial and on direct appeal; therefore the last reasoned opinion on the issue is from the Virginia Court of Appeals. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

10

> the time of giving his testimony, unless his condition is such that he is unable to narrate facts and events in a way to be relied on, and it is for the trial court in its discretion to determine whether or not his testimony should be received.'")). Thus, even assuming *arguendo* that the Commonwealth had imputed knowledge of the allegation that Watson smelled of alcohol, there was no exculpatory evidence withheld from [McDonald]. Accordingly, the trial judge did not err in refusing to set aside the verdict.

McDonald v. Commonwealth, No. 0773-12-2, 5-6 (Va. Ct. App. Apr. 24, 2013).

I agree with the Virginia Court of Appeals. McDonald offers the judge's recollection of an odor of alcohol and Bradshaw's statement that she witnessed Watson drinking as evidence of Watson's intoxication, but proof that Watson drank on the day of his testimony does not disqualify or necessarily impeach Watson as a witness.

Under Tomlinson, the trial court had discretion to determine whether Watson was too intoxicated to testify. The judge remembered being approached regarding an odor of alcohol but there was no indication that Watson was intoxicated, an incompetent witness, or that the Commonwealth was aware that Watson had consumed alcohol. Regardless, McDonald fails to show that the Commonwealth violated Brady; he has not proven that evidence of Watson's alcohol consumption was exculpatory or impeaching, that the Commonwealth knew and withheld information regarding Watson's intoxication, or that Watson's drinking was material.

Therefore, I grant the motion to dismiss as to Claim 2, because the state court's ruling was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts.

### C. Claim 3

In Claim 3, McDonald alleges that the Commonwealth violated Brady by failing to disclose that DNA testing was never done on the vehicle and materials found at the scene of the beating. In his petition, McDonald initially states that the Commonwealth violated Brady by

11

failing to disclose that DNA testing *had been done*, but later clarifies that he believes that the materials were never tested. He contends that the untested (and therefore undisclosed) DNA evidence was exculpatory and admissible under Workman v. Commonwealth, 636 S.E.2d 368 (Va. 2006) because the Commonwealth's failure to test the materials discredits the thoroughness and good faith of the investigation.[7] In support of his claim, McDonald submits a search warrant for the vehicle.

On habeas review, the state court held the following:

> [McDonald] cannot show the untested DNA was exculpatory or material under Brady. There is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795 (1972); see also Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. We have never held that the Constitution demands an open file policy (however such a policy might work out in practice . . . ."). In a case involving untested semen samples, the Supreme Court of the United States held the possibility that the untested materials may have exculpated the defendant "is not enough to satisfy the standard of constitutional materiality." Arizona v. Youngblood, 488 U.S 51, 56, 102 (1988). The exculpatory value of untested or unavailable evidence "must be apparent" before discovery is mandated by Brady. Id.; see also United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense."). Furthermore, McDonald's assertion that he could have used the information to discredit the police investigation is speculative and falls short of showing Brady prejudice in this case. The crime did not occur in the car. The case was primarily about the testimony of Watson and incriminating phone calls. McDonald has not shown that presenting the jury with information about untested samples from the car would "put the whole case in such a different light as to undermine the confidence in the verdict." Kyles, 514 U.S. at 435.

---

[7] In Workman, the Virginia Supreme Court held that the Commonwealth had violated Brady for not disclosing, despite an "open file" policy, significant exculpatory evidence that resulted from separate but related investigations. Specifically,
> "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." In this case, the Commonwealth concedes that the investigators' knowledge of [a separate case] was chargeable to the Commonwealth. Furthermore, the trial court's discovery order plainly mandated disclosure of such information."

Workman, 636 S.E.2d at 375 (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

12

McDonald v. Clarke, No. CL15-04-00, 9-10 (Va. Cir. Ct. May 21, 2015).

I agree with the Louisa County Circuit Court's holding that McDonald fails to show that the material would have been exculpatory and his speculation regarding the police investigation does not satisfy the requirements of either Workman or Brady. His case did not involve complicated forensic science or multiple related investigations; it involved an eyewitness, codefendant implication, and circumstantially incriminating phone records.

Therefore, I grant the motion to dismiss as to Claim 3, because the state court's adjudication was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts.

### D. Claims 4, 5, and 6

Claims 4, 5, and 6 are all defaulted under Parrigan.[8]

In Claim 4, McDonald argues that the Commonwealth committed a Brady violation by providing the defense with false Brady material prior to trial: that Craig Johnson was Watson's cousin.[9] However, because the Commonwealth provided this information to the defense pretrial and McDonald failed to raise the issue at trial or on direct appeal, the claim is barred under Parrigan. Regardless, the claim fails on the merits because none of the requirements of Brady

---

[8] McDonald does not allege or demonstrate cause and prejudice or a fundamental miscarriage of justice; therefore, I need not address potential excuses for his default. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000) (holding that, as petitioner bears burden to raise cause and prejudice or actual innocence, a court need not consider either if not asserted by petitioner). In his petition, McDonald includes both an affidavit from Sedrick Goins stating that McDonald did not take part in the beating and testimony from Craig Johnson that McDonald was not present at the scene. However, McDonald does not appear to assert an actual innocence argument. Regardless, I conclude that the underlying claims are without merit.

[9] Watson testified at trial that Johnson was not his cousin.

13

are satisfied: (1) the information is not exculpatory or impeaching,[10] (2) there is no evidence that the Commonwealth knew or suppressed the information, and (3) the information is not material.

In Claim 5, McDonald asserts that the Commonwealth committed a Brady violation by withholding exculpatory evidence regarding the credibility of Dwayne Shelton. Specifically, McDonald "now believe[s] that Shelton's number at the time [] was not on the phone records of the number [] that Shelton said Chad Goins called him from." Pet. 12 (phone numbers omitted). McDonald states the following in the current petition: "This information was exculpatory to the defense and should've been turned over by the Commonwealth before trial." Id.

First, since this "withholding" occurred at trial, McDonald could have raised the issue at trial and on direct appeal; therefore, the claim is barred under Parrigan. Moreover, the state habeas court found that McDonald had not shown that the Commonwealth suppressed favorable evidence. I agree with the Louisa County Circuit Court's analysis because McDonald has not factually supported the claim. See Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992) ("Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims.).

In Claim 6, McDonald contends that the Commonwealth committed a Brady violation by presenting a "false impact statement" to the jury during sentencing. Minor's daughter, Selina Mickey, stated that she was not working so that she could take care of Minor because he did not like to be left alone, had seizures, and had a child-like mind. McDonald supports his claim with a 911 call log from November 11, 2011, in which Mickey "told dispatch that her father had made threats toward her grandmother, and that Mr. Minor did not take his medication and was 'living with his girlfriend on Kinney Town Rd.'" Pet. 14.

---

[10] It is unclear from the record why the Commonwealth thought that Watson and Craig Johnson were cousins. Nevertheless, McDonald does not proffer any evidence showing that Watson made false statements regarding his relation to Craig Johnson; therefore, the information would not impeach Watson.

14

On habeas review, the circuit court found that "McDonald presents no evidence, including that from the 911 call log, that shows [Mickey's] statement is false. Furthermore, McDonald could have challenged the victim impact statement at trial or on appeal" and the claim was thus barred by Parrigan. McDonald v. Clarke, No. CL15-04-00, 12 (Va. Cir. Ct. May 21, 2015). I agree with the state court's analysis. McDonald has not shown that the Commonwealth violated Brady because he has not produced any evidence showing that the information was (1) exculpatory or impeaching, (2) suppressed by the Commonwealth, or (3) material.

Therefore, I grant the motion to dismiss Claims 4, 5, and 6 because the claims are procedurally defaulted without excuse, and the state habeas court's findings were not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts.

### E. Claim 7

In Claim 7, McDonald argues that counsel was ineffective for failing to fully investigate the victim's injuries and cause of injuries. Specifically, McDonald alleges that counsel was unable to properly cross-examine Minor's treating physician, Dr. Mark Shaffrey, because counsel never obtained the doctor's medical records. If counsel had obtained the records, counsel would have discovered an August 2011 letter that was "indirect [sic] contrast to what the doctor testified to at trial." Pet. 18. In support of his claim, McDonald provides one page of Dr. Shaffrey's testimony and notes from Minor's August 2011 follow-up visit.

The state habeas court found that:

> McDonald has satisfied neither the "performance" nor the "prejudice" prong of Strickland. Dr. Shaffrey testified that the victim, Steve Minor, arrived at the hospital with a large blood clot in his head. Dr. Shaffrey removed a large piece of Minor's skull in order to remove the blood clot. According to Shaffrey, Minor would have died without the surgery. Finally, Dr. Shaffrey testified that Minor's condition improved over several weeks, but he will have a scar from the surgery for life and possible seizures.

15

> Dr. Shaffrey's testimony was most relevant to the charge of aggravated malicious wounding. An element of aggravated malicious wounding is that the victim is "severely injured and is caused to suffer permanent and significant physical impairment." Va. Code § 18.2-51.2(A). While Dr. Shaffrey's August 9, 2011 letter notes Minor's improvement in health[11] in the six weeks following surgery, nothing in the letter shows that an aggravated malicious wounding did not occur. Minor was still left with a permanent scar. See, e.g., Hawkins v. Commonwealth, Record No. 0908-14-2, 2015 Va. App. LEXIS 136, at *4 (Va. Ct. App. Apr. 15, 2015) (upholding aggravated malicious wounding conviction where shooting victim would be left from surgery a "large scar, a permanent and significant physical impairment"). Thus, assuming that counsel had not obtained the August 9, 2011 letter, it would not have made a difference if used at trial.

McDonald v. Clarke, No. CL15-04-00, 14-15 (Va. Cir. Ct. May 21, 2015). (citations to transcript omitted).

I agree with the Louisa County Circuit Court's analysis. Nothing in Dr. Shaffrey's notes or testimony supports the contention that Minor did not suffer an aggravated malicious wounding. Six weeks after the emergency surgery, Dr. Shaffrey's pleasant surprise that Minor was doing so well does not alter the fact that Minor's injuries required the permanent removal of part of his skull, leaving a permanent scar. McDonald has not proven either prong of Strickland because counsel was not ineffective for failing to pursue a meritless argument. See Kimler, 167 F.3d at 893. Therefore, I grant the motion to dismiss as to Claim 7 because the state court's adjudication was not contrary to, or an unreasonable interpretation of, federal law, or an unreasonable determination of facts.

### F. Claim 8

Lastly, in Claim 8, McDonald avers that the evidence was insufficient to support his convictions because the only evidence of his participation in the beating of Minor was Watson's "dubious" eyewitness testimony. Pet. 22. Further, McDonald claims that Watson "was

---

[11] Dr. Shaffrey noted that Minor "denie[d] any difficulty with wound healing, fever, chills, nausea, vomiting, headaches, memory dysfunction, or speech difficulty . . . I am pleased that he is doing so well." Resp. Ex. 1, at 1, ECF No. 22.

intoxicated during his testimony, which would have altered both his memory of the incident and his reliability at trial." Pet. 22. He alleges that, at best, the evidence only shows that he could have been present during the altercation.

Federal habeas review of sufficiency of evidence claims are limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have fond the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The federal court considers circumstantial and direct evidence, and "allows the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Moreover, "[w]here there are conflicts in testimony, it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Id. at 1021-22 (citing United States v. Fisher, 484 F.2d 868, 860-70 (4th Cir. 1973), cert denied, 415 U.S. 924 (1974)); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

In rejecting McDonald's sufficiency argument on direct appeal, the Virginia Court of Appeals first found that Watson's testimony was not inherently incredible:

> [T]he jury saw and heard Watson testify, and credited his version of events. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Watson's prior felony convictions, possible intoxication at the time of the offense, and prior inconsistent statements all were matters explored on cross-examination. The jury was entitled to resolve conflicts in the testimony and evidence." See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). We cannot say Watson's testimony was "inherently incredible,

17

or so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 204 (1984).

McDonald v. Commonwealth, No. 0773-12-2, 3 (Va. Ct. App. Apr. 24, 2013).

Second, the appellate court also rejected McDonald's contention that he was not part of the group that beat Minor:

> Watson testified unequivocally that [McDonald] engaged in the attack. Initially, [McDonald] grabbed Watson by the arm when Watson got out of the vehicle. Watson knew [McDonald], and the area was well illuminated. After [McDonald] released Watson's arm, he joined the group that pursued Minor, knocked him to the ground, and beat him. Thus, the evidence was sufficient to prove beyond a reasonable doubt that [McDonald] was guilty of aggravated malicious wounding and malicious wounding by a mob.

Id. at 3-4.

Lastly, the court of appeals upheld McDonald's conviction of conspiracy[12] to commit malicious wounding:

> The facts and circumstances, considered together, proved that [McDonald] made an agreement with others to maliciously wound Minor. Kelly had been injured on the evening of July 19, 2011, and Sedrick was upset with Minor as a result. In fact, Sedrick tried to get Shelton to fight Minor, but Shelton refused. [McDonald] was heard on the telephone threatening to beat someone. Subsequently, Chad picked up Minor with the pretense of a trip to the store to purchase beer. Instead, Chad delivered Minor to the Kinneytown Road address where [McDonald], Sedrick, and others were waiting. The group beat Minor violently. The evidence proved beyond a reasonable doubt that [McDonald] was guilty of conspiracy.

Id. at 4.

I agree with the state court's analyses. Granted, McDonald's case presents several instances of conflicting testimony and inconsistent statements by the principals and the witnesses, but federal habeas courts do not "redetermine" credibility of witnesses at trial. Instead, habeas courts defer to the fact finder. The Commonwealth produced substantial direct

---

[12] Virginia defines conspiracy as "an agreement between two or more persons by some concerted action to commit an offense." Wright v. Commonwealth, 297 S.E.2d 711, 713 (Va. 1982).

18

and circumstantial evidence supporting the jury's finding; therefore, despite defense counsel repeatedly impeaching Watson, the verdict was not so outrageous that no rational trier of fact could have found McDonald guilty. Therefore, I grant the motion to dismiss as to Claim 8, because the state court's adjudication was not contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts.

## VI. Rule 6 Motion for Discovery[13]

On January 30, 2017, McDonald filed a motion for discovery seeking access to the October 17, 2014 hearing transcript. Under Rule 6, a judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure. A petitioner may show good cause where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). McDonald argues that he cannot dispute Detective Carlton Johnson's testimony without the transcripts, but he does not offer specific allegations demonstrating that he will be entitled to relief. Presumably, McDonald will disagree with the detective's testimony; however, I have already analyzed McDonald's claims and found them meritless; further discovery will not provide a pathway to habeas relief.

Therefore, I deny McDonald's motion.

## VII.

For the foregoing reasons, I grant Respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny Petitioner's pending motion. Based upon my finding that

---

[13] McDonald filed a motion pursuant to Rule 6 of the Federal Rules of Civil Procedure, but likely meant a Rule 6 motion pursuant to the Rules Governing Section 2254 Cases, which interplays with Rule 34 of the Federal Rules of Civil Procedure.

Petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

**ENTER:** This 27th day of July, 2016.

Jackson L. Kiser
Senior United States District Judge